**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:26-mj-25-KFW |
| FREDDY CASTRO-LEMA a/k/a JAIME CASTRO-LEMA | |

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO
DEFENDANT'S ARGUMENT THAT IMPEACHMENT
MATERIAL MUST BE DISCLOSED AT PRELIMINARY HEARING**

### I.      Introduction

Defendants' argument that impeachment material must be disclosed at the preliminary hearing in this matter is meritless. The evidence submitted by the Government establishes probable cause to believe that Defendant Freddy Castro-Lema re-entered the United States after prior removal.

### II.      Background

On January 19, 2026, United States Border Patrol agents found Freddy Castro-Lema in the United States, specifically, in Livermore, Maine. The facts surrounding this encounter are more fully set forth in the complaint affidavit and in G. Ex. 1.[1] To briefly summarize, Border Patrol agents approached the Defendant, who admitted that he did not speak English, that he was from Ecuador, and that he had no documents to establish

---

[1] The complaint affidavit stated, in error, that Castro-Lema was previously removed under the name "Jaime Castro-Lema" from New Orleans, Louisiana, on July 14, 2024. The complaint stated, in error, that Defendant was removed from New Orleans on July 24, 2014. DHS records from the Defendant's Alien File reflect that Defendant was previously removed under the name "Freddy Servando Castro-Lema from "AEX," which refers to Alexandria International Airport, in Louisiana, on September 24, 2014. *See*, G.Ex. 2. The correction of these inadvertent errors strengthens probable cause.

a legal right to be present in the United States.[2] Border Patrol agents arrested Castro-Lema and brought him to the Rangeley, Maine Border Patrol Station where he made further admissions concerning his immigration status. Specifically, Castro-Lema identified himself as "Freddy Servando Castro-Lema and stated that he'd previously changed his name in Ecuador from a previous name, "Jaime Tamilo Castro-Lema. He further admitted that he'd been previously removed from the United States, and that he most recently entered the United States in 2016. He further stated that he hadn't applied to the Attorney General of the United States for permission to re-enter the United States after his prior removal. Defendant signed a written statement, which was translated to him by a Spanish interpreter, in which he attested to the same information.[3] Records from Castro-Lema's Alien File reflect that he had previously been ordered removed by an order issued by an immigration judge on May 15, 2013, and was removed from the United States on September 24, 2014. *G. Ex.* 2.

Defendant was held in immigration custody, pending removal. On January 22, he was charged by complaint with re-entering the United States after prior removal in violation of 8 U.S.C. § 1326 (*Dkt*. 2) and arrested. Defendant's initial appearance was held on January 22, and the matter was continued to January 28 for a preliminary hearing and detention hearing.

At the preliminary hearing, the Government offered the facts contained in the affidavit submitted in support of the complaint, as well as *G.Ex. 1* and *G. Ex. 2*. The Government did not call any witnesses. The information contained in the complaint

---

[2] After Defendant stated he did not speak English, Border Patrol agents spoke with him in Spanish.
[3] In her arguments at the Detention hearing in his matter, Defendant's counsel contended that Defendant "was honest and fully cooperative and answered all questions…" *Tr.* at 17.

affidavit and in the two exhibits establish probable cause to believe that Defendant committed the charged offense.

After the Government offered its exhibits, Counsel for Defendant objected to the Court's reliance on the complaint affidavit, claiming that the "due process clause requires that hearsay relied upon by the Court bears sufficient indicia of reliability" and the Court should not admit the complaint affidavit "unless and until the Government represents on the record that it has conducted a *Giglio* and *Brady* inquiry into the disciplinary and credibility histories of Agents Hanton and Moayed and determined that no material impeachment evidence exists..." *Tr.* at 3-5.[4]

Defendant's counsel provided no legal authority for the proposition that the Court should not rely on the materials proffered by the Government at a preliminary hearing "unless and until Government represents on the record that it has conducted a *Giglio* and *Brady* inquiry into the disciplinary and credibility histories of [the agents]." Defendant's counsel provided the Court with a transcript of a proceeding in an unrelated matter, *United States vs. Kevin Bell*, No. 2:25-cr-00076-JAW, December 15, 2025. Counsel then mischaracterized statements contained by another Assistant United States Attorney in that matter, to suggest that the statements supported her argument. Notably, Defendant's counsel provided no request for impeachment material prior to the hearing and no notice to the Government that it would be making this argument. Accordingly, the Government requested that the hearing be continued, to provide time to review the transcript cited by Defendant's counsel and to consider and respond to her argument. Defendant's counsel opposed this request. The Court granted the

---

[4] Agent Moayed did not sign the complaint affidavit but his report concerning Defendant's arrest was offered as part of G.Ex.1.

Government's request and continued the matter until February 2 and permitted the

Government to file a written response to counsel's oral argument.

### III.   Preliminary Hearing Standard

The applicable standards governing preliminary hearings were helpfully summarized

in *United States v. Bowie*, No. 1:14-MJ-0189PAS, 2014 WL 4542974 (D.R.I. Sept. 12,

2014).

> The government's burden to establish probable cause at this preliminary stage is low. A preliminary hearing under Fed.R.Crim.P. 5.1 is narrow in scope. Its purpose is solely to test whether probable cause exists as to the offense charged. It is not a discovery mechanism for defendants, and is not a trial to determine guilt or innocence. Although mere suspicion does not suffice, probable cause may be found where there is a "fair probability," based on the totality of the circumstances, that a defendant committed the offense charged. *United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir.1987) (*quoting Illinois v. Gates*, 462 U.S. 213, 231 (1983)); *see United States v. Gomez*, 716 F.3d 1, 7 (1st Cir.2013). Both circumstantial evidence and the reasonable inferences drawn from it can support a finding of probable cause. *United States v. Swope*, 542 F.3d 609, 616 (8th Cir.2008); *United States v. Hilario*, CR No. 1:09–M–167A, 2009 WL 2913957, at *1 (D.R.I. Sept. 9, 2009). With the exception of the rules on privilege, the Federal Rules of Evidence are not applicable at preliminary hearings. Fed.R.Evid. 1101(d)(3). As a result, the probable cause finding may be based, in whole or in part, on hearsay evidence; in addition, evidence at the preliminary hearing is not subject to objection on grounds that it was unlawfully acquired. Fed.R.Crim.P. 5.1(e).
>
> The Supreme Court has counselled that probable cause is a "fluid concept," turning on the evaluation of evidence in a "nontechnical, common-sense" manner. *Gates*, 462 U.S. at 232, 235–36. "It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Based on this guidance, the magistrate judge's role at the preliminary hearing is simply to determine whether the government has presented sufficient evidence to establish probable cause. *United States v. Kin– Hong*, 110 F.3d 103, 120 (1st Cir.1997); *Ross v. Sirica*, 380 F.2d 557, 560 (D.C.Cir.1967). It is generally inappropriate for the magistrate judge to make credibility determinations, which fall within the province of the jury as the trier of fact. *United States v. Perez*, No. 5:14–MJ–75, 2014 WL 1725759, at *11 (S.D.Tex. Apr. 29, 2014) (at probable cause stage of proceedings, defense's credibility-focused efforts are essentially irrelevant).

Here, the sole purpose of the preliminary hearing is to determine whether there is probable cause to believe that Defendant committed the offense of reentering the United States after being removed, in violation of 8 U.S.C. § 1326.

## IV. Defendant is not entitled to Impeachment Material at the Preliminary Hearing

The Supreme Court has not addressed whether a defendant is entitled to exculpatory evidence or impeachment material at a preliminary hearing. However, *Brady* and its progeny are clearly focused on a defendant's right to a fair trial and the determination of guilt. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963) (Due process requires prosecutors to "avoi[d] … an unfair trial" by making available "upon request" evidence "favorable to an accused … where the evidence is material either to guilt or to punishment"); *United States v. Agurs,* 427 U.S. 97, 112–113 (1976) (defense request unnecessary); *Kyles v. Whitley,* 514 U.S. 419, 435 (1995) (exculpatory evidence is evidence the suppression of which would "undermine confidence in the verdict"); *Giglio v. United States,* 405 U.S. 150, 154 (1972) (exculpatory evidence includes "evidence affecting" witness "credibility," where the witness' "reliability" is likely "determinative of guilt or innocence"); *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (Right to exculpatory impeachment material is afforded as part of the Constitution's "basic 'fair trial' guarantee.")

Other federal courts have found that no federal law requires the disclosure of *Brady* materials before a preliminary hearing.  *See Jaffe v. Brown*, 473 F. App'x 557, 559 (9th Cir. 2012); *Shaw v. Andes*, No. 5:22-CV-00669-FLA (SK), 2024 WL 5274598, at *5 (C.D. Cal. Oct. 7, 2024), *report and recommendation adopted,* No. 5:22-CV-00669-FLA (SK), 2025 WL 551656 (C.D. Cal. Feb. 18, 2025); *Taylor-El v.*

*Macomber,* No. CV 23-5183 JFW (AS), 2025 WL 3131368, at *11 (C.D. Cal. Sept. 3, 2025), *report and recommendation adopted,* No. CV 23-05183-JFW(AS), 2025 WL 3127729 (C.D. Cal. Nov. 5, 2025); *Wepnner v. Cnty. of Erie*, No. 22-CV-00519-MAV, 2025 WL 3052048, at *19 (W.D.N.Y. Nov. 2, 2025).

Though the Supreme Court has not addressed whether *Brady* and *Giglio* disclosure obligations apply at the preliminary hearing, it has examined whether such obligations apply at other pre-trial stages in a prosecution. In *United States v. Williams*, the Court found that the district court may not dismiss an indictment on the ground that the government failed to disclose exculpatory evidence to the grand jury. 504 U.S. 36, 46–55 (1992). Noting that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge, the Court found that requiring prosecutors to present exculpatory evidence to grand juries would "alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body." *Id*. at 51. Similarly, the purpose of a preliminary hearing is to "determine whether there is probable cause to believe that an offense has been committed and that the arrested person has committed it." 18 U.S.C. §3060. Therefore, a rule meant to protect a defendant's right to a *fair trial* should not be superimposed on a preliminary hearing.

While there does not appear to be any legal authority suggesting that *Brady* disclosure obligations apply at a preliminary hearing, the argument for requiring disclosure of impeachment material is even weaker. The Supreme Court held in *Ruiz* that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id*. at 633. In so holding, the Court observed that "impeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary..." Id.*

at 629. A similar rule should apply to preliminary hearings as impeachment material is not needed to determine probable cause. Since the purpose of the preliminary hearing is merely to determine probable cause to believe a defendant committed the charged offense, credibility determinations are "seldom crucial." *Gerstein v. Pugh*, at 121. *See also United States v. Perez*, No. 5:14–MJ–75, 2014 WL 1725759, at *11. This is particularly true where, as here, no witnesses were called at the preliminary hearing. *Cf. United States v. Idris*, No. 2:25-mj-00077-KFW, *Dkt.* 27, (D.Me. 2025) (Defendant not entitled to disclosure of *Jencks* or Rule 26.2 material at preliminary hearing in which no witness testified).

In *Ruiz*, the Supreme Court further held that due process considerations weighed against requiring disclosure, as "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631-632. Weighing these concerns, the Court concluded, "We cannot say that the Constitution's due process requirement demands so radical a change in the criminal justice process in order to achieve so comparatively small a constitutional benefit." *Id.*  A rule applying *Brady* and *Giglio* disclosure requirements at the preliminary hearing stage raises similar concerns, especially since preliminary hearings occur at "an early stage of the prosecution when the evidence ultimately gathered by the prosecution may not be complete." *See Adams v. Illinois,* 405 U.S. 278, 282 (1972). The limited benefit of requiring disclosure at this early stage of prosecution is outweighed by the additional burden that the government would bear in preparing for preliminary hearings.

### V.      Government Policies Do Not Afford Defendant a Right to Impeachment Material at a Preliminary Hearing.

Perhaps because there is no legal authority for his claim, Defendant's argument rests primarily on his counsel's mischaracterization statements made by another Assistant United States attorney in unrelated case concerning internal government policies concerning inquiries regarding potential impeachment information. That discussion occurred in *United States vs. Kevin Bell*, No. 2:25-cr-00076-JAW, on December 15, 2025. *See Tr.* at *Dkt.* 124. In a conference with the court and opposing counsel, an Assistant United States Attorney discussed efforts made to obtain and disclose material impeachment information in anticipation of calling a witness at the defendant's impending criminal trial and related United States Attorney's Office policies. *Id.* The discussion did not concern preliminary hearings and did not suggest that the Government bears any burden to disclose impeachment material to a defendant at the time of a preliminary hearing. *Id.*

Department of Justice ("DOJ") policy, as stated in the Justice Manual, directs that "Impeachment information, which depends on the prosecutor's decision on who is or may be called as a government witness, will typically be disclosed at a reasonable time before trial to allow the trial to proceed efficiently. In some cases, however, a prosecutor may have to balance the goals of early disclosure against other significant interests—such as witness security and national security—and may conclude that it is not appropriate to provide early disclosure. In such cases, required disclosures may be made at a time and in a manner consistent with the policy embodied in the Jencks Act, 18 U.S.C. § 3500." *Justice Manual 9-5.001 - Policy Regarding Disclosure of*

*Exculpatory and Impeachment Information.*[5] There is no suggestion in the Justice Manual or in the prosecutors' statements in *United States v. Bell* that impeachment material should be disclosed to a defendant at the time of a preliminary hearing. To the contrary, DOJ policy affords prosecutors considerable discretion to delay disclosure of *impeachment information*, as opposed to *exculpatory information*, which prosecutors are directed to "disclosed reasonably promptly after it is discovered" absent concerns regarding classified or otherwise sensitive national security materials. *Id.*

In a written filing on February 2, 2026, Defendant provided further argument concerning DOJ policies. *Dkt.* 17. Like Defendant's oral argument, this filing fails to cite legal authority holding that *Brady* and *Giglio* disclosure obligations apply during a preliminary hearing. Defendant's counsel further mischaracterized DOJ policies in her written filing. Justice Manual 9-5.100 - *Policy Regarding the Disclosure to Prosecutors of Potential Impeachment Information Concerning Law Enforcement Agency Witnesses ("Giglio Policy")* contains policies governing the disclosure of potential impeachment material by law enforcement agencies to prosecutors and does not govern the timing of disclosures to defendants. As discussed, *supra*, DOJ policy affords prosecutors considerable discretion to delay disclosure of impeachment material and does not require disclosure at the time of a preliminary hearing.

Defendant's argument concerning government policy also falls flat because "the internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party." *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990). Thus, DOJ and United States Attorney's Office's

---

[5] Department of Justice Policies referenced herein are contained in the Justice Manual and available for public viewing at https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings. (Last accessed February 2, 2026).

policies are irrelevant to the question of whether impeachment material must be disclosed to a defendant at a preliminary hearing.

## VI.   Conclusion

Wherefore, for the above reasons, the Government respectfully requests that the Court enter an Order holding that the Government need not disclose impeachment material at the preliminary hearing. Accordingly, the Court should consider the evidence submitted by the Government and find probable cause that Defendant committed the offense charged in the complaint.

Dated: February 2, 2026          Respectfully submitted,

ANDREW B. BENSON
UNITED STATES ATTORNEY

By:    */s/ Nicholas M. Scott*
Nicholas M. Scott
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that I electronically filed the Government's Memorandum in Response to Defendant's Oral Argument that Impeachment Material Must Be Disclosed at Preliminary Hearing using the Court's CM/ECF system which will provide notice and copy to all counsel of record.


Dated: February 2, 2026                ANDREW B. BENSON
UNITED STATES ATTORNEY

By:    */s/ Nicholas M. Scott*
Nicholas M. Scott
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
Nicholas.Scott@usdoj.gov