UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:26-mj-00025-SDN |
| FREDDY CASTRO-LEMA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO DISMISS COMPLAINT WITH PREJUDICE

Pending before the Court is Defendant Freddy Castro-Lema's motion to dismiss the complaint with prejudice on the ground that the Government violated 18 U.S.C. § 3161(b) by failing to file an indictment within thirty days of his arrest, thereby violating his rights under the Speedy Trial Act. ECF No. 23. The Government agrees the failure to file an indictment violates the Speedy Trial Act but urges the Court to dismiss the complaint without prejudice. ECF No. 24. After careful consideration, the Court **GRANTS** Mr. Castro-Lema's motion to dismiss with prejudice.

## BACKGROUND

On January 19, 2026, United States Border Patrol ("USBP") agents encountered Mr. Castro-Lema in the area of Livermore Falls, Maine. Gov't Hrg. Ex. 1 at 3.[1] Upon questioning, he told agents he was a citizen of Ecuador and not present in the United States legally. *Id*. at 4. The agents conducted a records check and determined Mr. Castro-Lema had been ordered removed by a Newark, New Jersey, immigration judge on June 30, 2014. *Id*.; *see* Gov't Hrg. Ex. 2 at 1 (2014 warrant of removability). Following this

---

[1] These citations reference the Government's exhibits admitted at the preliminary hearing before the Magistrate Judge on February 2, 2026. *See* ECF Nos. 20, 22.

encounter, agents detained and transported Mr. Castro-Lema to the Rangeley Border Patrol Station in Rangeley, Maine. Gov't Hrg. Ex. 1 at 4.

On January 22, 2026, the Government charged Mr. Castro-Lema by criminal complaint in this Court with the felony offense of illegal re-entry of a removed alien in violation of 8 U.S.C. § 1326(a). *See* ECF No. 2. Officials then transferred him to the Somerset County Jail to await his initial appearance in court. Gov't Hrg. Ex. 1 at 5. The Magistrate Judge issued an arrest warrant the same day, ECF No. 4, and officers arrested him pursuant to the warrant. At his initial appearance, the Court ordered him temporarily detained under the Bail Reform Act ("BRA") and remanded him to the custody of the U.S. Marshals Service. *See* ECF Nos. 6, 10.

On January 29, 2026, the Court held the first part of a preliminary hearing to determine whether the complaint established probable cause and ordered his release on personal recognizance subject to location monitoring. *See* ECF Nos. 12, 14. At the second part of the preliminary hearing held on February 2, 2026, the Government introduced into evidence a warrant of removal/deportation stating the Defendant is subject to removal/deportation from the United States based upon a final order issued by an immigration judge. Gov't Hrg. Ex. 1 at 9. The warrant was issued on January 19, 2026, the same day USBP agents detained Mr. Castro-Lema. *Id*. At the conclusion of the February 2 hearing, the Court found probable cause and released Mr. Castro-Lema from custody on his own recognizance. ECF No. 19.

On March 23, 2026, Defendant moved to dismiss the complaint with prejudice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(b). ECF No. 23. According to defense counsel, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained Mr. Castro-Lema immediately after this Court released him on personal recognizance on

February 2. *Id*. at 2. Counsel could not locate Mr. Castro-Lema and his unknown whereabouts lead counsel to believe the Government had removed him from the country. *Id*. In its opposition to the motion to dismiss, the Government informed the Court for the first time that it had removed Mr. Castro-Lema from the United States to Ecuador on February 19, 2026. ECF No. 24 at 2.

As of March 23, 2026, the date of Defendant's motion, the Government had not filed an indictment in the case. Defendant therefore contends the Government has violated his speedy trial rights because it failed to file an indictment within thirty days of the date on which the Court found probable cause for the complaint to issue—February 2, 2026. *See* 18 U.S.C. § 3161(b). The parties agree the case must be dismissed, ECF No. 23 at 1; ECF No. 24 at 1, but Defendant argues dismissal should be with prejudice, while the Government contends dismissal should be without prejudice because it "simply lost track of the Indictment deadline," *id*. at 3.

## ANALYSIS

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Speedy Trial Act, in turn, codifies the time limits within which the Government must proceed before infringing on that right. *See* 18 U.S.C. § 3161. All agree the Act requires dismissal of this complaint. *See* 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit . . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."). The central question is whether the Court must dismiss with or without prejudice. In making that determination,

3

the statute directs the Court to consider "among others" the following factors: the seriousness of the offense; the facts and circumstances leading to dismissal; and the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Id.*

A review of the record reveals the Executive Branch—through both ICE and the U.S. Attorney's office for the District of Maine—initially elected to prioritize Defendant's criminal prosecution over his immediate removal from the United States. Agents obtained a warrant of removal/deportation on January 19, 2026, but did not immediately seek to execute it. Instead, the Government proceeded with criminal prosecution, as was its right, moving Mr. Castro-Lema from Border Patrol's Rangeley Station to a non-immigration facility—the Somerset County Jail—to detain him on the federal charge. Only after this Court entered a lawful conditional release order under the BRA did the Government reverse course and prioritize his immediate removal. At no point did the Government, despite its longstanding awareness of the removal warrant, attempt to coordinate with ICE, Defendant, or defense counsel to stay removal in light of the pending prosecution. The U.S. Attorney's office apparently did not even learn of Mr. Castro-Lema's removal until defense counsel filed the present motion and brought the issue to its attention. And, regardless of when prosecutors acquired this information, the Government did not inform the Court of Mr. Castro-Lema's removal until April 13, 2026. As one court observed in a similar context: "The Court cannot contemplate why the two Executive Branch agencies that began a concerted effort to deal with Defendant suddenly changed course." *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1135 (M.D. Fla. 2015). Here, the record indicates the agencies' objectives were in tension. Moreover, the timing and manner of the Government's decision to execute the removal warrant—which came only after the

Court ordered Mr. Castro-Lema's release, despite the Government's prior willingness to tolerate delay of removal to pursue the criminal prosecution—raises concerns about the Government's motives and its regard for Defendant's statutory and constitutional rights.

The Government now argues the burden fell on Mr. Castro-Lema to "forgo release pursuant to the Bail Reform Act and avoid the possibility of removal prior to resolution of the criminal matter." ECF No. 24 at 9. This position misapprehends the interplay between the BRA and immigration detention statutes and effectively presents a Hobson's choice: either Mr. Castro-Lema remains detained under the Court's criminal authority, despite the BRA otherwise authorizing release, so he can proceed to trial and challenge the criminal charges, or he can accept release and be removed by ICE with no meaningful ability to challenge the pending charges. More fundamentally, it suggests that Defendant must surrender one set of rights—the liberty interest in pretrial release that the BRA protects—in order to vindicate others, including his right to challenge the criminal charges of which he is presumed innocent.

Under the BRA, the Court must make an individualized assessment of a defendant's suitability for release. *See* 18 U.S.C. § 3142(e); *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990) ("Detention determinations must be made individually . . . ."). The BRA's release calculus does not encompass the risk of non-volitional non-appearance arising from deportation. *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Congress chose not to exclude removable [noncitizens] from consideration for release or detention in criminal proceedings."); *United States v. Lopez*, No. 23-CR-10269, 2023 WL 8039318, at *3 (D. Mass. Nov. 20, 2023) (adopting *Santos-Flores*'s reasoning). Defendant should not have been compelled to relinquish his liberty interest in pretrial release, as secured by the BRA, in order to

5

preserve his rights under the Speedy Trial Act.[2] Where the Government "elect[s] to deliver the [noncitizen] to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately . . . [it] may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act." *Santos-Flores*, 794 F.3d at 1091.

In this case, the Government's decision to remove Mr. Castro-Lema after it had chosen to charge him by way of criminal complaint compromised his statutory and constitutional rights and weighs in favor of dismissal with prejudice.[3] *See United States v. Argueta-Espinoza*, No. 18MJ3133, 2018 WL 4492226, at *2 (D. Neb. Sept. 19, 2018) ("The fact that ICE will not agree or cannot be trusted to delay deportation—that separate agencies within the Executive Branch do not communicate and cooperate—cannot serve to deprive a defendant of his rights" under the Constitution.); *Santos-Flores*, 794 F.3d at 1091 ("If the government, by placing [defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy.").

The remaining statutory factors also support dismissal with prejudice. The seriousness of Mr. Castro-Lema's offense falls at the low end of the spectrum; the maximum term of imprisonment is two years. *See* 18 U.S.C. §§ 1326(a), 3559(a)(5),

---

[2] Although the parties do not raise the issue, the Government's removal of Defendant also implicates his Sixth Amendment right to counsel. *See United States v. Lutz*, No. CR-19-692-1, 2019 WL 5892827, at *5 (D. Ariz. Nov. 12, 2019) (dismissing an indictment with prejudice where the Government removed the defendant following release on bond, thereby preventing him from consulting with counsel).

[3] The Court does not dispute that ICE may retain the authority to remove a defendant who is on conditional release. *See, e.g.*, *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1176 (D. Or. 2012) ("[I]f the Executive Branch intends to exercise its ICE detainer for the purpose of removing and deporting [defendant], it appears that it may well have the legal authority to do so."). That authority does not mean, however, that such a decision is without consequence for the underlying prosecution.

1326(a)(2). Both parties agree the advisory guideline range for a defendant like Mr. Castro-Lema with no criminal history would be zero to six months. *See* ECF No. 23 at 3–4; ECF No. 24 at 3. Although a violation of this Nation's immigration laws is serious, the record contains no allegation that Mr. Castro-Lema's alleged conduct caused direct harm to other people. *See United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988) ("The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence."); *United States v. Pena*, 73 F. Supp. 2d 56, 61 (D. Mass. 1999) (granting dismissal with prejudice when "there is no evidence that [defendant] dealt drugs or committed any other serious crimes after he illegally reentered the United States"). Moreover, the Court released Mr. Castro-Lema with location monitoring, which substantially reduced any risk that he would flee from either criminal or immigration authorities. *See United States v. Tamup-Tamup*, No. 25-CR-0066, 2025 WL 2662293, at *2 (D.R.I. Sept. 17, 2025) (finding release with GPS monitoring meant "[t]here was no significant risk to the government that [defendant] would flee and make his eventual deportation impossible").

The Government also asserts its inadvertent failure to meet the indictment deadline should weigh in favor of dismissal without prejudice.[4] *See* ECF No. 24 at 4. Generally, when "the actual speedy trial violation resulted solely from neglect rather than intentional misconduct, that circumstance tips ever so slightly in favor of dismissal without prejudice." *United States v. Barnes*, 159 F.3d 4, 17 (1st Cir. 1998). Although the U.S. Attorney's office may have been neglectful in failing to file a timely indictment, that

---

[4] The Government also asks the Court to hold a decision on this motion in abeyance pending the First Circuit's decision in *United States v. Pena de la Cruz*, No. 25-1648 (1st Cir. July 9, 2025). *Pena de la Cruz* concerns the dismissal of a case with prejudice pursuant to Federal Rule of Criminal Procedure 48(a), rather than the Speedy Trial Act. *See* Dkt. No. 25-CR-10106 (D. Mass. 2025), ECF No. 56. The Court therefore finds it inapposite and declines to delay resolution of this motion.

negligence does not absolve the Executive Branch of the deliberate choices it made in this case. As already explained, the Government knew of Mr. Castro-Lema's impending removal before the complaint was even filed, yet the two Executive Branch agencies involved chose not to coordinate to reach a workable solution that would account for both removal and the pending criminal prosecution, let alone one that would account for Mr. Castro-Lema's rights. Because the agencies did not communicate, Mr. Castro-Lema was deported and is now significantly disadvantaged in preparing a defense in his case, jeopardizing his constitutional as well as statutory rights. These circumstances lead the Court to conclude that dismissal with prejudice is required in the interests of justice. The Court further hopes this decision will encourage immigration authorities and the U.S. Attorney's office to coordinate more closely to prevent similar violations in the future.

## CONCLUSION

The Court accordingly **GRANTS** Defendant's motion to dismiss. ECF No. 23. The Court **DISMISSES** the complaint **WITH PREJUDICE**. ECF No. 2.

**SO ORDERED.**

Dated this 8th day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

8